UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CECELIA JONES, *on behalf of her minor daughter*,

Plaintiff,

v. Case No: 8:25-cv-02557-JLB-SPF

SCHOOL BOARD OF MANATEE COUNTY, FLORIDA, et al.,

Defendants.
_______________________________________/

**ORDER**

Plaintiff Cecelia Jones files this civil rights complaint under 42 U.S.C. § 1983 on behalf of her minor daughter, J.J., stemming from an alleged incident occurring while a student at a public school operated by Defendant School Board of Manatee County. The Complaint alleges that J.J. was confined to a separate room and restrained, in contravention of her Individual Education Plan ("IEP") and in violation of the Fourth Amendment, and that she was subsequently arrested by Manatee County Sheriff's Office deputies after being caught filming a physical altercation between two fellow students on school property. (Doc. 1). Before the Court are Defendant School Board of Manatee County, Florida ("School Board") and Defendant Manatee County Sheriff Rick Wells's motions to dismiss Plaintiff Cecelia Jones's Complaint (*id.*). (Docs. 28, 29). After careful review, the Court finds that Manatee's Motion to Dismiss is due to be **GRANTED in part and DENIED in part**, and Sheriff Wells's Motion to Dismiss is due to be **GRANTED**.

## BACKGROUND

J.J. was a twelve-year-old student with a disability with an IEP at a school in the School Board of Manatee County. (Doc. 1 at ¶ 12). The School Board was aware of J.J.'s disabilities. (*Id.* at ¶ 15). On September 22, 2021, J.J. used her cellular telephone to record two students engaged in a physical altercation on school property. (*Id.* at ¶¶ 21–23). Video surveillance footage of the incident also shows other students recording the altercation. (*Id.*). The Complaint claims that in response to J.J. recording the fight, Principal Kathleen Johnson and other school personnel targeted J.J., requiring her to be sent to a separate room on campus. (*Id.* at ¶ 24). School personnel kept J.J. in the room for about one hour against her will and demanded possession of her phone to delete the video recording of the students fighting. (*Id.* at ¶¶ 24, 28).

The Complaint further alleges that Principal Johnson and other school personnel, without legal justification, called Manatee County Sheriff's Office Deputies Beckwith and Schrenk into the room to confine and arrest J.J. (*Id.* at ¶¶ 35–36). Principal Johnson and the school counselor, Mary Dietrick, told the deputies that J.J. committed a crime by recording the fight and that they wanted J.J. arrested for making the recording and for failing to delete it. (*Id.* at ¶ 37). The deputies detained and arrested J.J. based on the principal's request. (*Id.* at ¶ 47). The Complaint alleges that school personnel did *not* take these actions against other students who recorded the fight. (*Id.* at ¶¶ 39–40). Charges against J.J. were eventually dropped. (*Id.* at ¶ 55).

Prior to the September 22, 2021, incident, J.J.'s mother made multiple complaints to the School Board for its failure to comply with J.J.'s IEP. (*Id.* at ¶ 18). After her arrest, J.J. filed an administrative complaint before the State of Florida's Division of Administrative Hearings ("DOAH"). (Doc. 29-1). The Administrative Law Judge ("ALJ") issued a Final Order[1] evaluating J.J.'s complaints, including whether the School Board violated the Individuals with Disabilities Education Act ("IDEA") by removing J.J. from her educational placement following the September 22, 2021, incident; whether Manatee inappropriately restrained and secluded J.J. after the incident; whether Manatee failed to provide notice of the restraint and seclusion; and whether Manatee failed to implement J.J.'s positive behavior intervention plan. (*Id.* at 1). The ALJ found in favor of the School Board and against J.J. as to all issues. (*Id.* at 19).

On September 22, 2025, Plaintiff filed a Complaint in this Court against the School Board, Deputies Beckwith and Schrenk in their individual capacities,[2] and Sheriff Rick Wells in his official capacity. (Doc. 1). The School Board and Sheriff

---

[1] Under the "incorporation by reference" doctrine, "a document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment only if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed." *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002). The Final Order from DOAH is central to Plaintiff's claims against Manatee because it deals with the same incident and is relevant to Manatee's dismissal arguments. Further, Plaintiff does not contest the authenticity of the document.

[2] The Complaint includes two claims against Deputies Judd Beckwith and George Schrenk in their individual capacities for Fourth Amendment violations under 42 U.S.C. § 1983. (Doc. 1 at 42–48). Neither Defendant Beckwith nor Defendant Schrenk filed a motion.

Wells filed motions to dismiss (Docs. 28, 29), and Plaintiff responded to each in opposition (Docs. 35, 39).

## LEGAL STANDARD

To avoid dismissal, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1274 n.1 (11th Cir. 1999) (citing *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998)). Thus, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

## DISCUSSION

Plaintiff brings a total of seven claims, four against the School Board and one against Sheriff Wells in his official capacity. The claims against the School Board include: (Count I: School Board) retaliation under the Americans with Disabilities Act ("ADA"); (Count II: School Board) false imprisonment and unlawful seizure under the Fourth Amendment; (Count III: School Board) equal protection violation under the Fourteenth Amendment; and (Count IV: School Board) failure to train

and supervise. (Doc. 1 at 22–41). Against Sheriff Wells, Plaintiff brings Count VII, a claim for failure to train and supervise. (*Id.* at 48–55). Both the School Board and Sheriff Wells have filed motions to dismiss the claims against them. (Docs. 28, 29). The Court addresses each in turn.

## I. School Board's Motion to Dismiss.

The School Board moves to dismiss on the grounds that Plaintiff is collaterally estopped from bringing counts I–III and, alternatively, Plaintiff fails to state a claim for relief as to counts I–IV. (Doc. 29).

### A. Collateral Estoppel.

First, the School Board argues that the Court should dismiss counts I (ADA retaliation), II (Fourth Amendment False Imprisonment/Unlawful Seizure), and III (Fourteenth Amendment Equal Protection) against it because these claims were litigated in the DOAH proceeding. (Doc. 29 at 10–12). Specifically, it contends that, because the DOAH issued an order finding that Plaintiff failed to show that the School Board improperly removed J.J. following the September 22, 2021, incident, that school personnel did not improperly restrain or seclude J.J., and that the School Board did not violate its obligations, then Plaintiff's claims before this Court for ADA and Fourth Amendment violations are precluded. (*Id.*) (citing Doc. 29-1 at ¶¶ 33, 39, 44).

"Collateral estoppel, i.e., issue preclusion, refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided." *Quinn v. Monroe Cnty.*, 330 F.3d 1320, 1328 (11th Cir. 2003). Collateral estoppel applies if:

"(1) an identical issue, (2) has been fully litigated, (3) by the same parties or their privies, and (4) a final decision has been rendered by a court of competent jurisdiction." *Id.* at 1329. Here, as to counts I–III, the parties are identical, and the final decision was issued by a court of competent jurisdiction. (Doc. 29-1). Thus, the Court moves to consider the remaining prerequisites.

Collateral estoppel is not a defense under Rule 12(b)(6); it is an affirmative defense under Rule 8(c). However, a party may raise collateral estoppel in a motion to dismiss "where the defense's existence can be judged on the face of the complaint." *Concordia v. Bendekovic*, 693 F.2d 1073, 1075 (11th Cir. 1982); *United States Golf Learning Inst., LLC v. Club Managers Ass'n of Am.*, No. 8:11-CV-2184-T-33EAJ, 2012 WL 768201, at *3 (M.D. Fla. Mar. 9, 2012) ("[C]ollateral estoppel may be raised on a motion to dismiss when the elements are apparent on the face of the pleadings and public documents of which the court may take judicial notice."). "[C]ollateral estoppel is an affirmative defense, and the party asserting it bears the burden to show that such an issue was formerly determined with sufficient certainty." *Lozman v. City of Riviera Beach*, 713 F.3d 1066, 1079 (11th Cir. 2013) (citation and internal quotation marks omitted).

Plaintiff's ADA claim under Title II is not precluded. The Eleventh Circuit has "consistently recognized [*Univ. of Tennessee v. Elliott*]'s conclusion that Congress did not intend unreviewed state administrative proceedings to have preclusive effect over Title VII claims." *Bishop v. City of Birmingham Police Dep't*, 361 F.3d 607, 610 (11th Cir. 2004) (citing *Univ. of Tennessee v. Elliott*, 478 U.S. 788,

795 (1986)). "[I]n a Title VII action a prior state decision enjoys issue preclusive effect only if rendered or reviewed by a court . . . . In contrast, unreviewed administrative determinations lack preclusive effect in a subsequent Title VII action, regardless of any preclusive effect state law might accord to them." *Id.* (quoting *McInnes v. State of Cal.*, 943 F.2d 1088, 1093 (9th Cir. 1991)). "The exception carved out in *Elliott*, however, extends to ADA claims because the ADA explicitly incorporates all of the enforcement powers, remedies, and procedures of Title VII." *Gatewood v. Unlimited Path, Inc.*, No. 5:18-CV-66-MCR-GRJ, 2019 WL 920912, at *2 (N.D. Fla. Jan. 17, 2019). Accordingly, Plaintiff's ADA claim is not precluded. Even if claims brought under Title II were subject to preclusion, Plaintiff's claim would not qualify because the ALJ never considered whether the School Board took action against J.J. in retaliation for prior complaints.

Section 1983 claims, unlike those under Title II, may be precluded. *Bishop*, 361 F.3d at 610 (citing *Elliot*, 78 U.S. at 796–97). In the DOAH proceeding, Plaintiff contended that J.J. was improperly restrained and secluded after recording the student altercation. (Doc. 29-1 at ¶ 34). In concluding otherwise, the ALJ found that "[n]o evidence was presented to establish that any school personnel improperly restrained or secluded [J.J.] following the subject incident or at any other time." (*Id.* at ¶ 39). The School Board argues that Plaintiff's unreasonable seizure claim is therefore precluded. (Doc. 29 at 10–12).

Certainly, the same issue is at stake in this action as in the DOAH action—whether J.J. was improperly restrained or seized. It is not clear, however, that the

claims arose from the same nucleus of operative facts or that the ALJ relied on the same factual predicate. *See Jang v. United Techs. Corp.*, 206 F.3d 1147, 1149 (11th Cir. 2000) (affirming the district court's dismissal of an action on res judicata grounds where "[t]he two cases involved the same cause of action for res judicata purposes because *Jang II* arose from the same nucleus of operative fact and relied on the same factual predicate as *Jang I*"). Indeed, the ALJ relied on facts not contained in Plaintiff's Complaint, like J.J. was secluded because she refused, both verbally and physically by running away, to go to the In-School Suspension ("ISS") room and repeatedly refusing to place her phone in an envelope. (Doc. 29-1 at ¶ 15). And the only document from the DOAH proceeding before the Court is the ALJ's Final Order. (Doc. 29-1). Thus, the collateral estoppel defense cannot be judged on the face of the Complaint and documents before it as to Plaintiff's Fourth Amendment unreasonable seizure claim. *See Concordia*, 693 F.2d at 1075; *United States Golf Learning Inst.*, 2012 WL 768201, at *3.

As to Plaintiff's equal protection claim, the Court likewise finds issue preclusion inapplicable. The School Board argues that the equal protection claim is barred because the ALJ concluded that it "did not violate its documentation and reporting obligations" as to J.J.'s restraint. (Doc. 29 at 11) (citing Doc. 29-1 at ¶ 43). In making this determination, the ALJ noted that the administrative complaint alleged that the teacher who knew how to implement J.J.'s IEP was ordered out of the room during the incident. (Doc. 29-1 at ¶ 48). Additionally, no data was collected during that school year on the implementation of J.J.'s behavior plan or

J.J.'s progress under a behavior plan. (*Id.*). Thus, the ALJ evaluated the School Board's obligations under the scope of those allegations. Neither factual allegation is before this Court. Here, Plaintiff's equal protection claim alleges that the School Board deprived J.J. of her rights and access to its disability-related programs and services through "multiple unlawful formal removal and/or expulsion, demanding arrest wherein J.J. was unlawfully arrested [and] unlawful[ly] confine[d]." (Doc. 1 at ¶ 110). Accordingly, the claim is not precluded.

**B. Failure to State a Claim.**

The School Board next argues that Plaintiff fails to state a claim as to counts I–IV. The Court agrees.

**i. (Count I: School Board)—Retaliation under the Americans with Disabilities Act.**

"The ADA prohibits retaliation against an individual for opposing an unlawful practice or making a charge under the ADA." *Frazier-White v. Gee*, 818 F.3d 1249, 1258 (11th Cir. 2016) (citing 42 U.S.C. § 12203(a)). To state a retaliation claim under the ADA, Plaintiff must establish that: (1) she engaged in statutorily protected expression; (2) she suffered an adverse action; and (3) the adverse action and protected expression were causally related. *Higdon v. Jackson*, 393 F.3d 1211, 1219 (11th Cir. 2004). "The third element requires a showing of but-for causation." *See Frazier-White*, 818 F. 3d at 1258. This is achieved by showing "that the protected activity and the adverse action were not wholly unrelated." *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1354 (11th Cir. 1999) (citation and internal quotation marks omitted).

Here, Plaintiff alleges that she, on behalf of her minor child J.J., repeatedly complained to the School Board about its substantial failure to follow J.J.'s IEP. (Doc. 1 at ¶ 18). Plaintiff alleges that, as a result of these complaints, the School Board targeted J.J. through unwarranted disciplinary actions and demanded her expulsion from school. (*Id.* at ¶¶ 74–84). Thus, Plaintiff's Complaint establishes the elements of an ADA retaliation claim. *See, e.g.*, *Doe by & through A.W. v. Hernando Cnty. Sch. Dist.*, No. 8:23-CV-1772-CEH-AAS, 2024 WL 3953093, at *9 (M.D. Fla. Aug. 26, 2024) (finding that plaintiff stated a retaliation claim under the ADA where, after a parent voiced concerns of disability discrimination, the student suffered unwarranted disciplinary actions, police reports, etc.).[3]

The analysis does not end there. Ordinarily, ADA violations entitle a plaintiff only to injunctive relief. *Silberman v Miami Dade Transit*, 927 F.3d 1123, 1134 (11th Cir. 2019). To get compensatory damages, as Plaintiff seeks, she must also prove that the School Board "engaged in intentional discrimination, which requires a showing of 'deliberate indifference.'" *Silberman*, 927 F.3d at 1134 (quoting *Liese v. Indian River Cty. Hosp. Dist.*, 701 F.3d 334, 348 (11th Cir. 2012)). "Deliberate indifference" is an "exacting standard" that "requires proof that 'the defendant knew that harm to a federally protected right was substantially likely and . . . failed to act on that likelihood.'" *Id.* (quoting *J.S., III by & through J.S. Jr.*

[3] The Court notes that, "in the absence of other evidence tending to show causation, if there is a substantial delay between the protected expression and the adverse action, the complaint of retaliation fails as a matter of law." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007). However, Plaintiff's Complaint does not provide a timeframe for when she complained to the School Board for failure to comply with J.J.'s IEP.

*v. Houston Cnty. Bd. Of Educ.*, 877 F.3d 979, 987 (11th Cir. 2017) and *Liese*, 701 F.3d at 344). Further, Plaintiff must show that an "'official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the [entity's] behalf had 'actual knowledge of discrimination in the [entity's] programs and fail[ed] adequately to respond.'" *Id.* (quoting *Liese*, 701 F.3d at 349). This official "must be 'high enough up the chain-of-command that his . . . acts constitute an official decision by the [entity] not to remedy the misconduct.'" *Id.* (quoting *J.S., III by & through J.S. Jr.*, 877 F.3d at 987).

Though Plaintiff does allege that the School Board was deliberately indifferent to a "strong likelihood" that retaliation against J.J. would result in an ADA violation (Doc. 1 at ¶ 87), Plaintiff makes no allegation against an official high enough in the School Board's chain of command who could remedy the misconduct. While the Complaint alleges that "Principal Johnson and counselor Dietrick retaliated against J.J.," it does not allege that either person, or someone else for that matter, was in a high-up position such that they could institute corrective measures or that their acts constituted an official decision by the School Board not to remedy the misconduct. (*Id.* at ¶ 74). Thus, Plaintiff has failed to state a claim for retaliation under the ADA. However, because Plaintiff may be able to state a sufficient claim, the Court will allow leave to amend. Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). Accordingly, this claim is **DISMISSED without prejudice**.

ii. **(Count II: School Board)—False Imprisonment/Unlawful Seizure under the Fourth Amendment.**

It is well-settled that government entities, including school boards, cannot be sued on a theory of vicarious liability for the alleged constitutional violations of their employees. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694–96 (1978). Only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694. Thus, to bring a section 1983 claim against Manatee, Plaintiff must demonstrate that (1) her constitutional rights were violated, (2) the defendant had a custom or policy that exhibited deliberate indifference to those constitutional rights, and (3) the custom or policy caused the violation. *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004).

To state a § 1983 claim for false imprisonment, Plaintiff must adequately allege the elements of common law false imprisonment and establish that the imprisonment resulted in a violation of her due process rights under the Fourteenth Amendment. *Ortega v. Christian*, 85 F.3d 1521, 1526 (11th Cir. 1996). The elements of false imprisonment are: "(1) the unlawful detention and deprivation of liberty of a person (2) against that person's will (3) without legal authority or 'color of authority' and (4) which is unreasonable and unwarranted under the circumstances." *Montejo v. Martin Mem'l Med. Ctr., Inc.*, 935 So. 2d 1266, 1268 (Fla. 4th DCA 2006)). This § 1983 false imprisonment claim is grounded in the

Fourth Amendment's guarantee against unreasonable seizures. *See id.*; (Doc. 1 at 27).

The School Board argues that Plaintiff cannot state a claim for unreasonable seizure because "Florida law requires school boards to ensure the safety of its students and staff." (Doc. 29 at 19) (citing Fla. Stat. §1006.13(1), (4)(a); *Ziegler v. Martin Cnty. Sch. Dist.*, 831 F.3d 1309, 1323 (11th Cir. 2016) ("[A] school official may detain a student if there is a reasonable basis for believing that the pupil has violated the law or a school rule.") (internal quotation marks and citations omitted)). Because there was a reasonable basis for believing that J.J. violated a school policy, the School Board argues, it did not violate J.J.'s Fourth Amendment rights by detaining her. (*Id.*).

However, whether a detention violates a student's rights requires a determination of (1) whether there was a reasonable basis for believing the student violated a law or school policy and (2) whether the detention was reasonably related in scope. *Ziegler*, 831 F.3d at 1323. Whether the School Board's detaining J.J. in a room for an hour was reasonably related in scope is not clear on the face of Plaintiff's Complaint. Indeed, the Complaint alleges that while J.J.—along with other students—was recording a video of the students fighting, only she was escorted to another room against her will for no apparent reason other than retaliation for her mother's complaints. (Doc. 1 at ¶¶ 21, 23–24, 95, 98). The School Board makes no argument that the detention was reasonably related in scope.

Thus, Plaintiff sufficiently alleges a constitutional violation at this early stage of litigation.

Plaintiff does not allege that the School Board had a custom or policy exhibiting deliberate indifference to J.J.'s constitutional right against unreasonable seizure or that such custom or policy caused the violation. *See McDowell*, 392 F.3d at 1289. Plaintiff argues that her allegation that "Manatee violated J.J.'s rights, and a practice, pattern, and/or policy of Manatee violating the same or similar rights against multiple disabled students existed during that same time" is sufficient. (Doc. 39 at 18–21) (citing Doc. 1 at ¶ 5). Alternatively, Plaintiff argues that a single decision is sufficient if made by an "official with final policymaking authority." (*Id.* at 15) (quoting *McMillian v. Johnson*, 88 F.3d 1573, 1577 (11th Cir. 1996)).

"[N]aked assertions" of wrongdoing are insufficient. *Weiland v. Palm Beach Cty. Sheriff's Off.*, 792 F.3d 1313, 1329–30 (11th Cir. 2015). Instead, allegations must support a theory "that is plausible on its face." *Twombly*, 550 U.S. at 570. The Eleventh Circuit opinion in *Hoefling v. City of Miami* is instructive. 811 F.3d 1271 (11th Cir. 2016). There, a local mariner sued the City of Miami under § 1983 for the unlawful seizure and destruction of his boat. *Id.* at 1274. The complaint alleged that, on the night of the seizure, a friend informed the plaintiff that police were patrolling and "taking boats," and that other mariners told the plaintiff that their boats had also been seized. *Id.* at 1280. The complaint also alleged that the plaintiff later learned the city was acting under a program to destroy ugly boats.

*Id.* The Eleventh Circuit held that these allegations were sufficient to draw a reasonable inference that the city had a custom or policy of unlawful seizure and destruction of boats. *Id.*

In making this determination, the Eleventh Circuit compared the allegations in *Hoefling* to those in *Weiland*. *Hoefling*, 811 F.3d at 1281. In *Weiland*, the plaintiff brought an excessive force claim against a sheriff's office under § 1983. 792 F.3d at 1328. The complaint made broad and vague allegations that the sheriff's office had "a policy of not training its deputies in the appropriate use of force when seizing mentally ill citizens for transportation to mental health facilities" and "a policy of using internal affairs investigations to cover up the use of excessive force against mentally ill citizens." *Id.* The Court noted that the facts in the complaint supporting these claims were those concerning the plaintiff's own circumstances, and the complaint made no allegations of similar incidents. *Id.* at 1329–30. Thus, the Court concluded these were mere "naked assertion[s]" and affirmed the district court's dismissal of the claims. *Id.*

The allegations in the Complaint here are more like those in *Weiland* and in *Hoefling*. Indeed, in support of a custom or policy of unreasonable seizure, Plaintiff relies on the allegation that "Manatee violated J.J.'s rights" and had a "practice, pattern, and/or policy of . . . violating the same or similar rights against multiple disabled students." (Doc. 1 at ¶ 5). Plaintiff does not allege any specific violation or identify any similar instances of such violation. This allegation is even broader than the allegations rejected by the *Weiland* Court. *See Nix v. Ayers*, No. 8:16-CV-

3435-T-17AAS, 2017 WL 9834372, at *4 (M.D. Fla. July 28, 2017) (finding that the plaintiff's allegations of a custom or policy were closer to those in *Weiland* than *Hoefling* where the complaint broadly alleged that the sheriff's office failed to train or supervise to prevent violations, failed to protect pretrial detainees, etc., without alleging any similar, prior incidents); *Cunningham v. Sch. Bd. of Lake Cnty.*, No. 5:15-CV-480-OC-30PRL, 2016 WL 1755612, at *6 (M.D. Fla. May 3, 2016) (same). Accordingly, Plaintiff has not alleged that the School Board had a custom, practice, or policy of unreasonably seizing disabled students.

Alternatively, Plaintiff argues that a single decision from an "official with final policymaking authority" is sufficient. (Doc. 39 at 14–15) (quoting *McMillian*, 88 F.3d at 1577 ("A municipality may be held liable for a single act or decision of a municipal official with final policymaking authority in the area of the act or decision.")). Here, Plaintiff argues that the School Board is the final policymaker. (*Id.*) (citing *Lontoc v. Sch. Bd. of Palm Beach Cnty.*, No. 24-12386, 2025 WL 3000545, at *4 (11th Cir. Oct. 27, 2025) (identifying the school board as the final policymaker in a school district under Florida law)).

"Under a ratification theory of *Monell* liability, a municipality can still be held responsible 'when a subordinate public official makes an unconstitutional decision' that is 'then adopted by someone who does have final policy making authority.'" *Lontoc*, 2025 WL 3000545, at *5 (quoting *Matthews v. Columbia Cnty.*, 294 F.3d 1294, 1297 (11th Cir. 2002)). Thus, even if a complaint identifies only the official decisionmaker, a plaintiff may be able to state a claim against a school board

"if [s]he otherwise pleaded sufficient facts to plausibly establish that the School Board, as the final policymaker, ratified the decisionmakers' unconstitutional conduct." *Id.* A school board "must ratify not only the decision itself, but also the unconstitutional basis for it." *Matthews*, 294 F.3d at 1297. "And when the final policymaker for a challenged . . . decision was a multimember body, the plaintiff must allege that 'a majority' of the members voted in favor of the decision 'for an unconstitutional reason.'" *McCarthy v. City of Cordele*, 111 F.4th 1141, 1146 (11th Cir. 2024) (quoting *Matthews*, 294 F.3d at 1295).

Here, the Complaint does not make sufficient allegations under the ratification theory. Plaintiff makes one vague allegation that "Manatee . . . ratified Principal Johnson's unlawful removal of J.J. from [school], and unlawful confinement and false reports to police." (Doc. 1 at ¶ 80). The Complaint makes no allegation as to the basis of this alleged ratification. It does not establish whether this is a multimember body in which the majority voted for these decisions for an unconstitutional reason.

Accordingly, Plaintiff has failed to state a Fourth Amendment claim against the School Board for unreasonable seizure. Because it is plausible that Plaintiff could state a claim, the Court will grant leave to amend. *See* Fed. R. Civ. P. 15(a)(2). Thus, this claim is **DISMISSED without prejudice**.

iii. **(Count III: School Board)—Equal protection under the Fourteenth Amendment.**

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the

laws, which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citation and internal quotation marks omitted).

Plaintiff brings an equal protection clause claim under § 1983, alleging that "J.J. is a member of a protected class based on her disabilities and race as an African-American" and that "multiple federal laws prohibit discrimination based on disability," including the ADA and IDEA. (Doc. 1 at ¶¶ 108–09). Yet, Plaintiff alleges, "[The School Board] repeatedly, intentionally recklessly and/or with deliberate indifference, deprived J.J. of her rights, access, benefits in and from, and participation in, its disability-related programs, services, and activities, all while J.J. was a qualified and recognized disabled minor student." (*Id.* at ¶ 110).

People with disabilities are not a suspect or quasi-suspect class under the Equal Protection Clause. *Stanley v. City of Sanford*, 83 F.4th 1333, 1344 (11th Cir. 2023) (citing *City of Cleburne*, 473 U.S. at 445–46). Though race is a suspect class, Plaintiff makes no allegation that any of the School Board's alleged discrimination was because of J.J.'s race. Thus, the School Board's actions are analyzed "under the lenient standard of rational basis review." *Id.* In other words, "[i]f 'there is any reasonably conceivable state of facts that could provide a rational basis for' [Manatee]'s [actions], it will be upheld." *Id.*

The Court need not evaluate the School Board's alleged discrimination for a rational basis because "a plaintiff may not maintain a section 1983 action in lieu of—or in addition to—a Rehabilitation Act or ADA cause of action if the only alleged

deprivation is of the [person]'s rights created by the Rehabilitation Act and the ADA." *Holbrook v. City of Alpharetta*, 112 F.3d 1522, 1531 (11th Cir. 1997). Plaintiff's allegations for her § 1983 equal protection clause claim stem from the School Board's alleged violation of the ADA. (Doc. 1 at ¶¶ 109–10). Indeed, Plaintiff specifically alleges that the disability discrimination at issue here is prohibited by the ADA and IDEA and that the School Board "intentionally[,] recklessly and/or with deliberate indifference" deprived J.J. of its disability-related programs and services while she was a "qualified . . . disabled minor." (*Id.*). These allegations mirror language from the ADA and elements required to show discrimination under the ADA. *See Nehme v. Fla. Int'l Univ. Bd. of Trs.*, 121 F.4th 1379, 1383 (11th Cir. 2024) ("Title II of the [ADA] forbids public entities from denying the benefits of their 'services, programs, or activities' to any 'qualified individual with a disability . . . by reason of such disability.'") (quoting 42 U.S.C. § 12132); *Silberman*, 927 F.3d at 1134 (quoting *Liese*, 701 F.3d at 348 (to receive compensatory damages under the ADA, a plaintiff must demonstrate that the entity "engaged in intentional discrimination, which requires a showing of 'deliberate indifference.'")). Accordingly, Plaintiff's Equal Protection Clause claim is **DISMISSED with prejudice**.

#### iv. (Count IV: School Board)—Failure to Train and Failure to Supervise.

Plaintiff's last claim against the School Board, brought under § 1983, alleges that it failed adequately to train and supervise its staff. (Doc. 1 at 33–41). Specifically, Plaintiff alleges that the School Board's "failure to adequately train

and supervise its staff in federal law ADA, IEP, and IDEA requirements . . . resulted in its deprivation of the clearly established equal protection . . . for its disabled students." (*Id.* at ¶ 121).

The School Board "is not automatically liable under section 1983 even if it inadequately trained or supervised its police officers and those [officials] violated [J.J.]'s constitutional rights." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998). "[T]here are only 'limited circumstances' in which an allegation of a failure to train or supervise can be the basis for liability under § 1983." *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 387 (1989)). Such limited circumstances occur "only where the municipality inadequately trains or supervises its employees, this failure to train or supervise is a . . . policy, and that . . . policy causes the employees to violate a citizen's constitutional rights." *Id.* (citing *City of Canton*, 489 U.S. at 387).

Here, Plaintiff alleges that the School Board's failure to train and supervise resulted in an equal protection violation. (Doc. 1 at ¶ 121). Because the Court found that Plaintiff's equal protection claim is due to be dismissed as alleged, there is no underlying constitutional violation in the first instance. *See supra* Part I.B(iii); *Knight through Kerr v. Miami-Dade Cnty.*, 856 F.3d 795, 821 (11th Cir. 2017) ("There can be no policy-based liability or supervisory liability when there is no underlying constitutional violation.").

In any event, the Court agrees with the School Board that this claim is time-barred. (Doc. 29 at 22–23). Claims brought pursuant to § 1983 are subject to Florida's four-year personal injury statute of limitations. *Chappell v. Rich*, 340 F.3d

1279, 1283 (11th Cir. 2003) (citing *City of Hialeah v. Rojas*, 311 F.3d 1096, 1103 n.2 (11th Cir. 2002)); Fla. Stat. § 95.11(3). The § 1983 claim begins to accrue when "the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights." *Van Poyck v. McCollum*, 646 F.3d 865, 867 (11th Cir. 2011).

Plaintiff's claim, filed on September 22, 2025, stems from the School Board's purported failure to train and supervise its staff regarding J.J.'s IEP. (Doc. 1 at ¶¶ 121–23). Indeed, the Complaint alleges that the School Board did not comply with the law for development and revision of the IEP, did not address IEPs in accordance with the law prior to removing disabled students to more restrictive placement, did not comply with "tier-3 placement" for disability-related services for "EBD unit[s]," failed to timely review or revise IEPs, and failed to properly place disabled students in appropriate alternative placements when in home instruction. (*Id.* at ¶ 123). Plaintiff alleges that she knew of the School Board's failure to comply with J.J.'s IEP and made several complaints to the School Board regarding these failures. (*Id.* at ¶ 18). Thus, to the extent that Plaintiff's failure to train and supervise claim relies on events before September 22, 2021, those allegations are time-barred.

In response, Plaintiff points to her allegation that "[e]ven after the charges were dropped, [the School Board] continued to retaliate against J.J. due to complaints by her mother to DOAH and the DOE of [the School Board's] failure to comply with J.J.'s IEP and provide J.J.'s disability related programs and services." (Doc. 39 at 19) (citing Doc. 1 at ¶ 79). This allegation is not incorporated as part of

Plaintiff's failure to train and supervise claim. (*See* Doc. 1 at ¶ 116). Even so, this concerns the School Board's retaliation against J.J. for its *prior* alleged failure to comply with J.J.'s IEP, which Plaintiff *previously* complained to the School Board. Accordingly, Plaintiff's failure to train and supervise claim is due to be **DISMISSED with prejudice**.

## II. Sheriff Wells's Motion to Dismiss.

Plaintiff alleges that Sheriff Wells, in his official capacity as Sheriff of Manatee County, failed to train and supervise staff pursuant to § 1983. (*See id.* at 48–55). Sheriff Wells moves to dismiss, arguing that the Complaint fails to state a claim because it does not sufficiently allege that a custom, practice, or policy was the moving force behind the alleged deprivation of a federal right. (Doc. 28).

As the Court previously discussed, the circumstances under which an allegation for failure to train or supervise can be the basis for § 1983 liability are limited. *See Supra*, Part I.B(iv) (citing *Gold*, 151 F.3d at 1350). This limited circumstance occurs "only where the municipality inadequately trains or supervises its employees, this failure to train or supervise is a . . . policy, and that . . . policy causes the employees to violate a citizen's constitutional rights."[4] *Id.* Because "a municipality rarely will have an express written or oral policy of inadequately training or supervising its employees," a plaintiff may prove such policy exists through "a 'deliberate indifference' . . . to the rights of persons with whom the police

[4] The underlying constitutional violations for Plaintiff's failure to train and supervise claim are her claims against Deputies Beckwith and Schrenk for false arrest and false imprisonment, which are not before the Court on a motion. (*See* Doc. 1 at 42–48).

come into contact." *Gold*, 151 F.3d at 1350 (quoting *City of Canton*, 489 U.S. at 388–89).

To demonstrate deliberate indifference, a plaintiff "must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and . . . made a deliberate choice not to take any action." *Id.* The Eleventh Circuit has "repeatedly . . . held that without notice of a need to train or supervise in a particular area, a municipality is not liable as a matter of law for any failure to train and supervise." *Id.*; *see Wright v. Sheppard*, 919 F.2d 665, 674 (11th Cir. 1990) (affirming the district court's dismissal of plaintiff's failure to train claim against the sheriff's office because the sheriff "had no actual notice of unconstitutional practices" and "the court found no evidence of a history of widespread prior abuse by [sheriff's office] personnel that would have put the sheriff on notice of the need for improved training or supervision").

Here, Plaintiff makes broad allegations that the Sheriff's Office "repeatedly and persistently permitted its deputies" to unlawfully seize and detain students without probable cause or reasonable suspicion, unlawfully based probable cause for arrest on non-criminal acts, manufacture crimes where none exist, and violate the rights against unlawful seizure, detention, arrest, and imprisonment. (Doc. 1 at ¶ 172). These are mere "naked assertions" of wrongdoing. *Weiland*, 792 F.3d at 1329–30. Indeed, Plaintiff does not identify *any* similar instances of such violations. Though allegations of a custom or policy need not be overly specific, they must provide sufficient facts to support a theory "that is plausible on its face." *Twombly*,

550 U.S. at 570; *compare Hoefling*, 811 F.3d at 1280 (holding that allegations of custom or policy were sufficient where the plaintiff alleged that he had been told of other, similar seizures and learned of the city's boat-seizing program), *with Weiland*, 792 F.3d at 1329–30 (holding broad and vague allegations of misconduct, such as "a policy of not training . . . deputies in the appropriate use of force when seizing mentally ill citizens," insufficient to establish a custom or policy).

Accordingly, Plaintiff's failure to train and supervise claim against Sheriff Wells in his official capacity is **DISMISSED without prejudice**.

*—Remainder of page intentionally left blank—*

## CONCLUSION

It is **ORDERED**:

1. Defendant Manatee's Motion to Dismiss (Doc. 29) **GRANTED in part and DENIED in part**. The Motion is **GRANTED** to the extent that counts III and IV of Plaintiff's Complaint are **DISMISSED with prejudice** and **DENIED** to the extent that counts I and II are **DISMISSED without prejudice**.
2. Defendant Sheriff Wells's Motion to Dismiss (Doc. 28) is **GRANTED**. Accordingly, count VII of Plaintiff's Complaint is **DISMISSED without prejudice**.
3. The Court grants Plaintiff leave to amend counts I, II, and VII, if Plaintiff may do so in good faith. Should Plaintiff do so, Plaintiff must file the amended complaint within twenty-one (21) days from the date of this Order.

**ORDERED** in Tampa, Florida, on September 28, 2026.

JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE